IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JAMES E. ATCHISON                                            PLAINTIFF

v.                          Civil No. 09-2102

DEPUTY WAGNER, Sebastian
County Adult Detention Center                                      DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, James E. Atchison (hereinafter Atchison), pursuant to the provisions of 42 U.S.C. § 1983. Atchison proceeds *pro se* and *in forma pauperis*.

Atchison is currently incarcerated at the Craighead County Detention Center. The events at issue in this lawsuit occurred while Atchison was incarcerated in the Sebastian County Adult Detention Center. Specifically, he maintains the Defendant used excessive force against him and retaliated against him by filing a disciplinary charge against him.

Defendant, Deputy Wagner (hereinafter Wagner), filed a motion for summary judgment (Doc. 9). To assist Atchison in responding, a questionnaire was prepared (Doc. 13). Plaintiff has filed his response (Doc. 14). The motion is therefore ready for decision.

### I. BACKGROUND

Atchison was booked into the Sebastian County Adult Detention Center (SCADC) on April 20, 2009, on charges of parole violation, breaking or entering, a petition to revoke a suspended sentence, and theft of property. *Plaintiff's Response* (Doc. 14)(hereinafter *Resp.*) at ¶ 1. On May 27, 2009, Atchison was convicted of the offense of breaking and entering and sentenced to 180 months in the Arkansas Department of Correction (ADC). *Id.* at ¶ 2. He remained incarcerated at the SCADC until July 8, 2009, when he was transferred to the ADC. *Id.* at ¶ 3.

On July 2, 2009, after locking down BB pod, Wagner noticed Atchison was still in the shower. *Resp.* at ¶ 4. According to Wagner, he flashed the lights one more time and told Atchison to go to his cell. *Defendant's Exhibit* (hereinafter *Deft's Ex.*) 2 pg. 1. Atchison states he did not notice the lights. *Resp.* at ¶ 5(A). However, Atchison heard Wagner say that "whoever was in the shower did not want for him to have to come up there." *Id.* After this statement was made, Atchison knew he needed to get to his cell. *Id.* at ¶ 5(B).

Nevertheless, Atchison did not immediately go to his cell. *Resp.* at ¶ 5(C). Atchison states he was trying to dry off at least enough to get his underwear on. *Id.* Atchison maintains it would not have been proper to go to his cell in the nude and might even have been a violation of the rules. *Id.*

According to Wagner, Atchison yelled across the pod to Wagner that he was not through taking his shower and would go to his cell when he was finished. *Deft's Ex.* 2 pg. 1. Atchison maintains he did not make this statement. *Resp.* at ¶ 6.

Wagner called for two deputies to assist him with taking Atchison to his cell. *Deft's Ex.* 2 pg. 1; *Resp.* at ¶ 7 (without knowledge to agree or disagree). Deputies Stamps and Olivarez arrived and the three deputies entered the pod and approached the shower. *Deft's Ex.* 2 at pg. 1. Atchison states he noticed the other deputies when he was assaulted. *Resp.* at ¶ 8.

Wagner maintains he used "soft hand" contact to escort Atchison to his cell. *Deft's Ex.* 2 at pg. 1. According to Olivarez, Wagner grabbed Atchison's towel, wrapped it around him, and escorted him with soft hand contact to his cell. *Id.* at pg. 4. Atchison maintains this did not occur. *Resp.* at ¶ 14. He asks: "Would you grab a towel and wrap it around a naked man?" *Id.*

Atchison states he was trying to dry off when Wagner assaulted him. *Resp.* at ¶ 5(C). Atchison maintains he was not resisting and was trying to comply with Wagner's order. *Id.* at ¶ 9.

If he had been resisting, Atchison imagines that the use of force would have involved measures of a more physical nature. *Id.* Atchison indicates Wagner assaulted him by twisting his arm behind his back and following him to his cell without giving him a chance to put on clothes. *Id.* at ¶ 18. Atchison sustained no injuries. *Id.* at ¶ 9.

Atchison then asked for a grievance form. *Resp.* at ¶ 19; *Deft's Ex.* 3 (first page only-- both pages of the grievance are attached to the complaint (Doc. 1)). When Wagner gave him the grievance form, Atchison maintains Wagner attempted to make amends for what he had done. *Id.* Atchison states he responded that Wagner had no right to put his hands on him. *Id.* After dinner, more than an hour later, Atchison indicates he was moved to administrative segregation and told he was being charged with failure to obey a lawful request. *Resp.* at ¶¶ 20-21; *Deft's Ex.* 3 (first page only-- both pages of the grievance are attached to the complaint (Doc. 1)). Atchison indicated he felt this was Wagner's retaliation for Atchison's refusal to accept the apology. *Id.* Atchison also stated he felt his physical well-being was threatened because Wagner's first reaction to any situation was physical or threatening in nature. *Id; see also Resp.* at ¶ 17 (deputies reactions to any situation, no matter how trivial, is of a physical and threatening nature).

According to Wagner, after he spoke with Corporal Hicks, the determination was made to charge Atchison with a disciplinary violation for failure to obey a lawful request and move him to segregation. *Deft's Ex.* 2 pg. 1. Atchison was advised of the charge. *Resp.* at ¶ 11. A disciplinary hearing was held on July 5th. *Id.* at ¶ 12. Atchison maintains he refused to participate in the disciplinary proceedings, or sign the disciplinary form, and went back to his cell. *Id.* at ¶ 13. His conduct was apparently taken as an admission of guilt because the disciplinary form indicates he plead guilty. *Deft's Ex.* 2 pg. 2. He was given ten days lock-down. *Id.*

Atchison indicates he had not considered whether to sue Wagner in his official capacity, his individual capacity, or in both capacities. *Resp.* at ¶ 22(A). However, after reading the incident reports, Atchison wants to sue Wagner in both his individual and official capacities. *Id.* Atchison indicates he contends a custom, policy, or practice of Sebastian County was the moving force behind the violation of his constitutional rights. *Id.* at ¶ 22(B). However, without having copies of the policies and procedures, he states he cannot describe the policy, custom, or practice. *Id.*

## II.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. DISCUSSION

Defendant has moved for summary judgment. First, he argues he has been named in his

official capacity only. As there is no suggestion of an unconstitutional policy, practice or custom, Defendant maintains he is entitled to judgment in his favor. Second, Defendant maintains he is entitled to summary judgment on the excessive force claim because only the amount of force reasonably necessary to control Atchison and obtain his compliance was used. In this regard, he points out that Atchison suffered no physical injury. Third, Defendant maintains there was no retaliation against Atchison. Finally, Defendant claims he is entitled to the defense of qualified immunity.

### *Official and Individual Capacity*

Defendant maintains only official capacity claims have been asserted in the complaint and there is no proof of an unconstitutional custom or policy. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Id. 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. Id. 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice

of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989); *see also Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999)(in actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient").

Plaintiff is proceeding *pro se* in this case. Understanding the distinction between official capacity and individual capacity claims is at times difficult for even those with legal training to make. *See e.g., Vanhorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007)(state officials misconstrued the differences between official and individual capacity claims and the immunities available). Given the duty of the Court to liberally construe *pro se* pleadings, the Plaintiff's request for an award of punitive damages, the Defendant's argument that he is entitled to qualified immunity, a defense only available to defendants sued in their individual capacities, *Parrish v. Ball*, 594 F. 3d 993, 1001 (8th Cir. 2010), and the fact that it does not appear Defendant will be unfairly prejudiced in anyway, I will construe the complaint as asserting individual and official capacity claims against the Defendant.

However, I agree there is no basis on which Sebastian County may be held liable. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 & n. 55, 694 (1978) (plaintiff seeking to impose

liability on local government body under 42 U.S.C. § 1983 must show official policy or widespread custom or practice of unconstitutional conduct that caused deprivation of constitutional rights); *see also City of Canton v. Harris,* 489 U.S. 378, 388,(1989) (inadequacy of police training may serve as basis for § 1983 liability only where failure to train amounts to deliberate indifference to rights of persons with whom police come into contact). Plaintiff was asked to describe the custom, policy, or practice of Sebastian County that resulted in the violation of his constitutional rights. He identified no such custom, policy, or practice. *Resp.* at ¶ 22(B).

### *Excessive Force*

On July 2, 2009, Plaintiff was in convicted status. *Resp.* at ¶ 2. "[T]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." *Wilson v. Spain*, 209 F.3d 713 (8th Cir. 2000)(*citing Whitley v. Albers*, 475 U.S. 312, 318-322 (1986)). "The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers regardless of whether an inmate suffers serious injury as a result." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002)(citations omitted). The Supreme Court has held that when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (*quoting Hudson*, 503 U.S. at 6-7). To make this determination, the Court is to consider, among other things, the following factors: "the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." *Jones*, 207 F.3d at 495 (citations omitted).

Recently, the Supreme Court addressed the relative importance of the existence of, and extent of, injury in this analysis. In *Wilkins v. Gaddy* 130 S. Ct. 1175, 1178 (2010), the Court stated "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied." *Id*. The Court noted that "injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Id*.

In this case, there is no genuine issue of material fact as to whether Wagner used excessive force against Atchison. The only force used was Atchison's arm was twisted behind his back and he was escorted to his cell. Wagner was attempting to lock-down the pod and had directed Atchison to return to his cell. Atchison did not comply with this direction. A minimal amount of force was used to obtain Atchison's compliance. No other force was utilized and Atchison sustained no injury. There is no genuine issue of material fact as to whether the force was maliciously and sadistically applied to cause harm.

*Retaliation*

In order to prevail on a First Amendment retaliation claim, Atchison must establish that: "he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007)(citation omitted). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Id*, at 1029 (citations omitted).

Courts have recognized that prisoners will inevitability take exception to the decisions and that claims of retaliation may readily be fabricated. For this reason, it has been noted that claims of retaliation are to be examined with skepticism and care. *See e.g., Flaherty v. Coughlin*, 713 F.2d 10

(2d Cir. 1983).

In this case, I believe there are no genuine issues of material fact as to whether Wagner retaliated against Atchison. Atchison was advised he was being charged with a rule violation, had a hearing, and there is nothing suggesting the decision maker was not impartial. *See Hartsfield v. Nichols,* 511 F.3d 826, 829, 831 (8th Cir.2008) (defendant may successfully defend retaliatory-discipline claim by showing "some evidence" that discipline was imposed for actual rule violation; report from correctional officer, even if disputed by inmate and supported by no other evidence, suffices as "some evidence" if violation is found by impartial decision maker). Atchison points to no other evidence of retaliation.

### IV.  CONCLUSION

For the reasons stated, I recommend that Defendant's motion for summary judgment (Doc. 9) be granted and this case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of February 2011.

/s/ *J. Marschewski*
  HON. JAMES R. MARSCHEWSKI
  CHIEF UNITED STATES MAGISTRATE JUDGE